DREW, J.
 

 | ] Jason Cooper and Victor Mitchell were each convicted of indecent behavior with a juvenile and oral sexual battery. Both of the defendants were sentenced to five years at hard labor, on each charge, to be served concurrently. They now appeal. We affirm.
 

 FACTUAL ALLEGATIONS
 

 In late summer of 2007, Jason Cooper, age 25, was the pastor at Macedonia Baptist Church in Rayville. His stepbrother, 23-year-old Victor Mitchell, was the pastor at Old Mount Olive Baptist Church in Oak Ridge.
 

 In September of that year, L.M.S., a 14-year-old male and a member of Macedonia Baptist Church, visited Cooper’s home. Mitchell was also present. While the three were sitting together in the living room, one of the defendants turned out the lights and Mitchell began to kiss L.M.S. on the back of the neck. Mitchell requested that L.M.S. perform oral sex upon him, and the juvenile did so. Cooper then performed oral sex upon L.M.S. After these actions, L.M.S. left the residence and did not come forward with his accusations for several months.
 

 In December of 2007, A.A., a 16-year-old male, accompanied Cooper and Mitchell to a church service in Bastrop. On the way back to Rayville, the men pulled into the parking lot of Mount Olive Baptist Church and performed oral sex upon each other, while A.A. sat in the backseat.
 

 Before returning to A.A.’s home (where he lived with his aunt) the men pulled into a secluded area. Cooper reclined his seat, positioned himself, and performed oral sex upon A.A. Afterwards, Mitchell did the same.
 

 12Pays later, A.A. came forward with his allegations and an official investigation ensued.
 

 On May 8, 2008, a Richland Parish grand jury jointly indicted Cooper and Mitchell with one count of molestation of a juvenile, in violation of La. R.S. 14:81.2, for having committed a lewd and lascivious act on December 29, 2007, upon A.A., a male juvenile who was 16 at the time of the crime.
 

 On June 24, 2008, Cooper and Mitchell were charged by bill of information with separate charges of oral sexual battery, in violation of La. R.S. 14:43.3, against L.M.S., a male juvenile, for the offense that occurred in September of 2007. The cases were consolidated with consent of all
 
 *463
 
 parties, and each defendant was charged with two counts: (1) molestation of a juvenile, A.A., and (2) oral sexual battery against L.M.S.
 

 Trial was held in August of 2009.
 

 TESTIMONY
 

 Officer Tamario Turner, an investigator with the Rayville Police Department, testified that:
 

 • he became involved after an initial complaint was made by C.S., A.A.’s aunt and primary caregiver;
 

 • the sexual misconduct occurred on December 29, 2007;
 

 • he interviewed A.A. on January 2, 2008;
 
 [1]
 

 • he discovered that the pastors picked up A.A., took him to a Bastrop church service, then stopped at Mitchell’s church on the way home;
 

 13* after arriving at the church, the defendants began to perform oral sex upon one another in the presence of A. A.;
 

 • the defendants then drove to a secluded area, whereupon Cooper reclined his seat, and performed oral sex upon A. A.;
 

 • Mitchell then did the same thing to A. A.;
 

 • A.A. showed the officer the location of the oral sex acts and identified a photograph of the location at trial;
 

 • A.A. told him he didn’t try to flee, because he was scared; and
 

 • since the acts occurred outside the city limits, he turned the case over to Chuck Stephenson with the Richland Parish Sheriffs Department.
 

 On motion of the defense, the trial court made an
 
 in camera
 
 inspection of four statements in the state’s possession made by the victims to determine whether there were any material inconsistencies with a deposition
 
 [2]
 
 taken by defense counsel. The trial judge found none, though he did note the absence of some detail in one statement.
 

 A.A. then testified that:
 

 • he lives with his aunt, C.S., and two of his cousins;
 

 • prior to this incident, he attended Macedonia Baptist Church since birth and attended services approximately twice a week;
 

 • Jason Cooper was the pastor of Macedonia Baptist Church, and he identified him in court;
 

 • he knew Victor Mitchell, and identified him in court;
 

 • he had been Youth President at the church and was on the Usher Board;
 

 • on December 27, 2007, Cooper requested permission from A.A.’s aunt to allow A.A. to accompany them to a service in Bastrop;
 

 • the defendants picked him up from his house in Mitchell’s car;
 

 14* after the church service, the defendants stopped at Mitchell’s church;
 

 • he sat in the backseat, and the pastors in front;
 

 • while in the church parking lot, Mitchell performed oral sex on Cooper;
 

 
 *464
 
 • he could not see the act, but he could hear it;
 

 • Cooper then performed oral sex on Mitchell;
 

 • when they finished, Cooper asked A.A. whether he was mad at them;
 

 • he responded that he was not mad but just wanted to go home;
 

 • they drove toward Rayville, but then stopped and parked in a secluded area of town;
 

 • Cooper asked him to scoot forward, unzipped Alls pants and began to perform oral sex upon him, gripping his legs to prevent his escape;
 

 • when Cooper finished, he switched places with Mitchell and drove off;
 

 • Mitchell then performed oral sex upon AA;
 

 • he was very frightened and contemplated jumping out of the car;
 

 • he identified the defendants in open court as the same men who performed oral sex upon each other and upon him;
 

 • he identified photographs of Mitchell’s vehicle;
 

 • when he was dropped off at home, Cooper gave him $40 and told him, “What happens in this car, stays in this car”;
 

 • he immediately washed off and changed into his nightclothes;
 

 • later that night, he told his female cousin that he did not want to be around them any more because they were gay;
 

 • he did not disclose to his cousin what had happened to him because he felt ashamed; and
 

 • A.A.’s mother and aunt took him to the Macedonia Baptist Church for a meeting, where he told all who were present about what had happened. | BE.J., C.S.’s daughter and A.A.’s cousin, stated that:
 

 • she has a close relationship with A.A. and that he is like a brother to her;
 

 • A.A. returned home later than expected on the night in question;
 

 • he went to the bathroom without saying hello, which was unusual;
 

 • when he exited the bathroom, he had a scared look on his face;
 

 • she begged A.A. to open up about whatever had happened;
 

 • initially A.A. told her that he no longer wanted to go with “them,” because they are “gay”;
 

 • A.A. was uncomfortable telling the story and used gestures and brief statements about what the defendants did to each other;
 

 • A.A. told her that Cooper gave him $40 and said, “what happens in the car, stays in the car”; and
 

 • later that night, Mitchell arrived, wanting her and her friends go out to eat with him.
 

 H.J., a friend of E.J.’s, testified that:
 

 • a lifelong resident of Rayville, she knows the defendants and A.A.;
 

 • she was at C.S.’s apartment on December 29, 2007, when A.A. returned home, and she described him as looking disturbed;
 

 • Mitchell then came into the home and asked them to go with him to the casino or out to eat, but they denied his request; and
 

 • after leaving the home, Mitchell called her cell phone several times, inquiring as to her whereabouts and asking if he could visit her.
 

 T.B., another friend of E.J.’s, testified that:
 

 • she knew Mitchell well, as they went to high school together;
 

 
 *465
 
 • she knew Cooper, but had never spent any time with him;
 

 • she was at C.S.’s apartment on the night of December 29, 2007, when A.A. arrived, looking disturbed and scared; and
 

 • Mitchell later entered the home, appearing nervous.
 

 | ñC.S., the aunt and guardian of A.A., testified that:
 

 • she let A.A. accompany the defendants to a church event in Bastrop;
 

 • when A.A. returned home, he would not talk to her;
 

 • she asked her daughter to speak with him, and learned that the two preachers performed oral sex upon each other;
 

 • at this point, A.A. had not revealed his allegations that the defendants had also performed oral sex upon him;
 

 • she called a deacon once she learned what had happened;
 

 • a meeting was held at the church two days later, where A.A. repeated that the defendants performed oral sex upon one another; and
 

 • at the urging of his mother to tell the complete truth, A.A. admitted that both defendants performed oral sex upon him.
 

 The recorded testimony of Officer Chuck Stephenson was played
 
 [3]
 
 because he had died prior to trial in this matter. Stephenson testified that:
 

 • he came into contact with L.M.S. after his investigation of the case involving A.A., which led him to believe that there might be another victim;
 

 • L.M.S. told him that in September of 2007, he was at Cooper’s home with both defendants present, all three being seated on the sofa;
 

 • one of the defendants turned off the television and the lights;
 

 • L.M.S. told him that Mitchell began rubbing his foot on L.M.S.’s groin area, at which point Cooper left the room;
 

 • Mitchell began to kiss the back of L.M.S.’s neck and asked him to perform oral sex on him, which L.M.S. did;
 

 • according to L.M.S., Cooper stopped him from leaving the residence;
 

 • Cooper pulled down L.M.S.’s pants and performed oral sex upon him;
 

 • at the time of these events, L.M.S. was 14 years old; and
 

 17* L.M.S. said he had not come forward sooner because he was scared.
 

 Quinton O’Neal Rucker, a cousin and neighbor of Cooper’s, stated:
 

 • he saw L.M.S. at the house in September of 2007 in the evening;
 

 • he spent time with Cooper in October 2008;
 

 • he asked Cooper if the allegations regarding A.A. were true; and
 

 • when pressed, Cooper admitted paying the juvenile for oral sex.
 

 L.M.S., who testified that he was 16 years old at trial, stated that:
 

 • he grew up in Rayville, and was a Macedonia Baptist Church usher;
 

 • in September of 2007, when he was 14 years old, he stopped at Cooper’s house, which was just one block away from L.M.S.’s home;
 

 • he confirmed exactly what he had told Officer Stephenson; and
 

 
 *466
 
 • he did not tell anyone before because he was embarrassed. The defendants called Deacon Ernest Brown, who testified that:
 

 • he was at the meeting where the allegations were initially discussed;
 

 • Cooper became pastor in August of 2007;
 

 • A.A. alleged neither at C.S.’s apartment, nor initially at the church, that the defendants molested him;
 

 • during the meeting at the church, these people were present: Deacon Brown, Chief of Police Willie Robinson, Mary Ricks, C.S. (A.A.’s aunt), D.A. (A.A.’s mother), and A.A.’s uncle; and
 

 • only after he and Chief Robinson had left the meeting for a moment, then returned, did A.A. advise of his molestation.
 

 Mary Ricks, a member of Macedonia Baptist Church and a part-time employee with the Rayville Police Department, testified that:
 

 • she was present for the church meeting, and that A.A. did not initially claim that he was sexually assaulted;
 

 • Chief Robinson and Deacon Brown left the room and, at that point, A.A.’s mother, aunt, and uncle asked A.A. if anything else happened;
 

 Is* each family member present assured A.A. that they would still love him if anything else had happened; and
 

 • A.A. hung his head and said nothing further while she was present.
 

 Jason Cooper testified in his own defense, stating that:
 

 • A.A.’s family and L.M.S.’s family were friends;
 

 • he denied ever talking about the case with Quinton Rucker;
 

 • he denied performing oral sex upon L.M.S.;
 

 • he denied that Mitchell was ever present when L.M.S. visited him;
 

 • he denied ever observing Mitchell perform sex on L.M.S.;
 

 • he admitted taking A.A. to the Bastrop church;
 

 • he admitted giving him money for his birthday;
 

 • he admitted that following the service, they stopped to get gas;
 

 • he denied that he and Mitchell performed oral sex upon each other and denied that either of them performed oral sex upon A.A.;
 

 • he did stop at Mitchell’s church and Mitchell spent about 25 minutes fixing the church’s PA system while he and A.A. remained in the vehicle;
 

 • they then dropped A.A. off at his home and did not take any detours;
 

 • they left the Bastrop church at 9:30 p.m., got gas, which took about 10 to 15 minutes, then stopped at the church for about 20 to 30 minutes, then took the young man to his home in Rayville, 25 minutes away;
 

 • he could not explain the extra 20 or more minutes because he was not positive as to the specific times;
 

 • he heard the charges first from Velma Harrison on New Year’s Day;
 

 • he was present at the church during the meeting although not in the same room as A.A. and his family; and
 

 • the church has been sued as a result of the allegations.
 

 | ¡Victor Mitchell testified in his own defense, stating that:
 

 • on December 29, 2007, he was a 23-year-old pastor at Old Mount Olive Baptist Church in Oak Ridge, Louisiana;
 

 • on the evening of December 29, 2007, he and Cooper picked up A.A. from his
 
 *467
 
 home prior to attending services at a church in Bastrop;
 

 • following the Bastrop services, they went to his church in Oak Ridge so that he could fix his PA system for his services the following day;
 

 • after he fixed his PA system, which took approximately 20 minutes, they returned to Rayville and dropped off A.A. at his home;
 

 • he denied asking E.J. and her friends to accompany him to a restaurant or the casino that night;
 

 • he denied performing oral sex on A.A.,
 

 • he denied having oral sex with the defendant Cooper,
 

 • he denied the allegations made by L.M.S.;
 

 • after the allegations were brought forward, C.S. hugged him and told him, “this is not meant for you”;
 

 • they left Bastrop at about 9:20 p.m., stopped 10 minutes for gas, then drove to the Oak Ridge church, which took about 20 minutes; and
 

 • after spending 20 minutes at the church, they returned to Rayville, though he could not recall what time they dropped A.A. at his home.
 

 The jury unanimously found each defendant guilty of both charges.
 

 A presentence investigation (“PSI”) was ordered for both defendants.
 

 At the time of sentencing, defendant Cooper was 27 years old, with no prior criminal history, and a pastor at a local church. He was sentenced to five years on each charge, with the sentences to run concurrently.
 

 Victor Mitchell’s PSI also revealed that he had no prior criminal history and that ite was a pastor at a local church. At the time of sentencing, he was 25 years old and married. He received the exact same sentence.
 

 I inPISCIJSSION
 

 I. Sufficiency
 

 La. R.S. 14:81(A)(1) provides, in pertinent part:
 

 A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
 

 (1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child’s age shall not be a defense[.]
 

 La. R.S. 14:43.8 provides, in pertinent part:
 

 A. Oral sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender when the other person has not yet attained fifteen years of age and is at least three years younger than the offender:
 

 (1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender; or
 

 (2) The touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim.
 

 B. Lack of knowledge of the victim’s age shall not be a defense.
 

 Our law on review for sufficiency of the evidence is well settled.
 
 [4]
 
 A |nreview of the evidence presented at trial, viewed under
 
 *468
 
 the
 
 Jackson
 
 standard, is sufficient to support all of the elements of both convictions as set forth herein.
 

 Indecent behavior with juveniles
 

 To convict an accused of indecent behavior with a juvenile, the state must prove beyond a reasonable doubt that the defendant: (1) committed any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen; (2) was over the age of seventeen and more than two years older than the victim; and (3) had the intention of arousing or gratifying the sexual desires of either person. La. R.S. 14:81;
 
 State v. Free,
 
 26,267 (La.App.2d Cir.9/21/94), 643 So.2d 767,
 
 unit denied,
 
 94-2846 (La.3/10/95), 650 So.2d 1175.
 

 At trial, the state established that the victim, A.A., was 16 years old on De-cember 29, 2007, and the defendants, Jason Cooper and Victor Mitchell, were 25 and 23 respectively. A.A., an eyewitness and victim to |12the event, observed the defendants perform oral sex upon each other and testified that both defendants performed oral sex upon him.
 

 The state proved the defendants intended to arouse or gratify either their own or the victim’s sexual desires. Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendants. La. R.S. 14:10(1);
 
 State v. Draughn,
 
 2005-1825 (La.01/17/07), 950 So.2d 583,
 
 cert. denied,
 
 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377. The determination of whether the requisite intent is present in a criminal case is for the trier of fact.
 
 State v. Huizar,
 
 414 So.2d 741 (La.1982);
 
 State v.
 
 
 *469
 

 Hill,
 
 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied,
 
 2007-1209 (La.12/14/07), 970 So.2d 529. The nature of the act of oral sex allows the trier of fact to infer an intention, on the part of the defendants, to arouse one’s sexual desires. In reviewing the correctness of such a determination, the court should review the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince a reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt as to every element of the offense.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Huizar, supra.
 

 The evidence also establishes that there was a confession made by the defendant Cooper to his cousin, Mr. Rucker, that A.A.’s allegations were true. The jury was also aware of Mr. Rucker’s prior conviction for identity theft arising from an incident involving one of the defendants (Cooper).
 

 |
 
 yjOral sexual battery
 

 The state established that the victim, L.M.S., was 14 years old, and the
 

 defendants, Jason Cooper and Victor Mitchell, were 25 and 23 years old, respectively, in September of 2007. L.M.S., the eyewitness and victim, testified that he performed oral sex upon Mitchell and that Cooper performed oral sex upon him (L.M.S.). Athough no physical evidence existed, the trier of fact made a credibility determination. There is sufficient evidence to find each defendant guilty of both charges.
 

 II. The Testimony of Six Witnesses
 

 Defendants argue that the trial court erred in allowing the testimony of Officer Turner, E.J., H.J., T.B., C.S., and Quinton Rucker, because these witnesses were unknown to the defense, and their testimony was inculpatory and constituted hearsay.
 

 The state alleges full compliance with all discovery requirements, further alleging that the objections not being raised at trial are thus waived.
 

 Our law on discovery in criminal cases is well settled.
 
 [5]
 

 
 *470
 
 |14Our law on hearsay testimony in criminal cases is also well settled.
 
 [6]
 

 Failure to provide notice of any and all witnesses
 

 No statute requires the state to provide the defense with a list of all intended witnesses, nor does the defense in its brief offer any supporting 11filaw, baldly asserting that the trial court committed manifest error in allowing Officer Tamario Turner to testify because the defendants were not put on notice of his involvement with the case. Turner’s testimony was not inculpatory in nature, only providing background for the involvement of Officer Stephenson in the case. Had Stephenson been alive to testify at the trial, Officer Turner’s testimony would not have been necessary.
 

 Officer Turner simply testified that he was told of A.A.’s allegations and that once he realized the incidents occurred out of his jurisdiction, he handed the case over to Officer Stephenson. The defense complains that the state did not file a copy of Officer Turner’s report. However, by Officer Turner’s own admission, he did not prepare a report.
 

 The defense also complains that they were not put on notice that C.S., AA.’s primary caregiver and aunt, would be called as a witness. As noted above, the state is not required to provide a list of every prospective witness. The claims concerning these two witnesses are without merit.
 

 Inculpatory statements
 

 Under La. C. Cr. P. art. 768, if the state intends to introduce a confession or inculpatory statement in evidence, it shall advise the defendant in writing prior to beginning the state’s opening statement. On August 14, 2009, the state’s 768 notice was filed into the record. In this notice,
 
 *471
 
 the state provided that it intended to introduce statements made by Mitchell to E.J., T.B., and H.J. Thus, this also put the defense on notice that these witnesses would be called, and that it intended introduce the statement made by Cooper that, “what happens in the car, stays in the car.”
 

 LfiOn the Saturday prior to trial, the state was approached by Quinton Rucker, who told the state of defendant Cooper’s confession that A.A.’s allegations were true. On the following business day, Monday, August 17, 2009, the state filed a supplemental Article 768 notice putting the defense on notice of its intent to use Mr. Rucker’s statements.
 

 Trial did not commence until August 18, 2009. Thus, the state complied with the requirement that it provide notice of its intent to use inculpatory statements and/or confessions before giving its opening statement. Therefore, this assignment is without merit. The discovery rules were not violated. Nonetheless, the effects of a discovery violation may be remedied by effective cross-examination.
 
 State v. James,
 
 38,-353 (La.App.2d Cir.5/12/04), 873 So.2d 858. A review of the record reveals that all of the witnesses were subject to rigorous cross-examination.
 

 Hearsay statements
 

 The defense complains that many of the state’s witnesses were able to provide hearsay testimony. Specifically, the defense complains that E.J., T.B., H.J., and C.S. were able to testify as to what the victim, A.A., told them when he arrived home on the night in question. The record is replete with hearsay objections by both the defense and the state, at times grounded in the law and at others, baseless. Regardless of whether the complained of statements constituted hearsay, it was harmless error to allow the statements. There existed sufficient evidence to support the guilty verdict, which is surely unattributable to the error.
 
 State v. Johnson, supra; State v. McIntyre, supra; McIntyre v. Louisiana, supra.
 
 The de-clarants were Inadequately cross-examined.
 

 III. Ineffectiveness of Counsel
 

 The defense alleges that the defendants received ineffective assistance of counsel due to counsel’s failure to: (1) object to the testimony of Officer Turner, E.J., H.J., T.B., C.S., and Quinton Rucker; (2) object to certain hearsay statements; and (3) call Willie Robinson as a witness. The state responds that these claims should be considered in an application for post conviction relief and not on appeal.
 

 Our law on ineffective assistance of counsel is well settled.
 
 [7]
 

 
 *472
 
 | isThis record is sufficient to deny the ineffectiveness claims.
 

 Claim One: Failing to object to certain witnesses being allowed to testily
 

 The defendants, through appellate counsel, allege that trial counsel allowed numerous witnesses to testify who should have been disqualified. The defendants argue that these witnesses should not have been allowed to testify because they were unknown to the defense prior to trial and their statements were inculpatory in nature. The defendants fail to cite reasons or any supporting law why these witnesses should have been so disqualified.
 

 The defense alleges that Officer Tamario Turner should not have been allowed to testify because neither his existence nor his involvement with the case was disclosed. By the defense’s own admission, trial counsel objected based upon discovery violations, but was overruled by the trial court. Because defense counsel timely objected, this claim of ineffective assistance of counsel is without merit.
 

 The defense alleges that the state did not give notice of E.J., H.J., and T.B. testifying. Defense counsel objected to these witnesses being allowed to testify, with the trial court overruling the objections, allowing these witnesses to testify as to the demeanor of the victim, A.A., in the moments following the sexual assault. It is unclear what more defense counsel could have done. Because trial counsel timely objected, this claim of ineffective assistance of counsel is meritless.
 

 119The defendants allege that the state did not give notice that it would call C.S. as a witness and that the failure of the defense counsel to object constituted ineffective assistance of counsel. Defense counsel, however, had no objection to make that is supported by law.
 

 The defense alleges that defense counsel’s allowance of Mr. Rucker’s testimony resulted in the defendants receiving ineffective assistance of counsel. However, defense counsel received timely Article 768 notice of this witness and also objected to
 
 *473
 
 his testimony. There is nothing more that counsel could have done. This assignment is without merit.
 

 Claim Two: Failing to object to hearsay statements
 

 The defendants allege that numerous hearsay statements were permitted, but identify only two in brief. They have failed to establish that, but for counsel’s errors, the result would have been different. Ample evidence for convictions existed with the victims’ testimony alone.
 

 Claim Three: Failing to call Chief Willie Robinson as a witness
 

 Defendants do not allege what Robinson’s testimony would have been or how it would have affected the trial. The election to call or not to call a particular witness is a matter of trial strategy and is not,
 
 per se,
 
 evidence of ineffective assistance.
 
 State v. Lee,
 
 89,969 (La.App.2d Cir.8/17/05), 909 So.2d 672,
 
 unit denied,
 
 2006-0247 (La.9/1/06), 936 So.2d 195.
 

 The testimony is replete with objections raised by defense counsel. A review of the record establishes that the defense rigorously cross-examined every witness. The defendants had effective trial counsel.
 

 hoDECREE
 

 All convictions and sentences are AFFIRMED.
 

 [1]
 

 . Officer Turner was questioned as to what statements/allegations A.A. made during the interview, at which time the defense objected on the grounds of hearsay. A sidebar conference was held outside tire presence of the jury. The jury returned and was instructed that Officer Turner’s statement was not to be taken as truth of the matter asserted, but rather only to explain his reasons for taking further action.
 

 [2]
 

 . The deposition was taken for a pending civil suit instituted by A.A.’s mother against Macedonia Baptist Church.
 

 [3]
 

 . This recorded testimony had originally been elicited while the defendants were present and able to cross-examine this witness.
 

 [4]
 

 . The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable
 
 *468
 
 doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979);
 
 State v. Tate,
 
 2001-1658 (La.5/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Robertson,
 
 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Gilliam,
 
 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508,
 
 writ denied,
 
 2002-3090 (La.11/14/03), 858 So.2d 422.
 

 The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law.
 
 State v. Casey,
 
 99-0023 (La.1/26/00), 775 So.2d 1022,
 
 cert. denied,
 
 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
 

 Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency.
 
 State v. Speed,
 
 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582,
 
 writ denied,
 
 2009-0372 (La.11/6/09), 21 So.3d 299;
 
 State v. Allen,
 
 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622,
 
 writs denied,
 
 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255,
 
 cert. denied,
 
 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
 

 In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of state witnesses, obviously believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State
 
 v.
 
 Wiltcher,
 
 41,981 (La.App.2d Cir.5/9/07), 956 So.2d 769;
 
 State v. Burd,
 
 40,480 (La.App.2d Cir. 1/27/06), 921 So.2d 219,
 
 writ denied,
 
 2006-1083 (La.11/9/06), 941 So.2d 35. The testimony of a sexual assault victim alone is sufficient to convict a defendant. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant.
 
 State v. Chandler,
 
 41,063 (La.App.2d Cir.9/8/06), 939 So.2d 574,
 
 writ denied,
 
 2006-2554 (La.5/11/07), 955 So.2d 1277.
 

 [5]
 

 . La. C. Cr. P. art. 716 provides:
 

 A. Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph or otherwise reproduce any relevant written or recorded confession or statement of any nature, including recorded testimony before a grand jury, or copy thereof, of the defendant in the possession, custody, control, or knowledge of the district attorney.
 

 B. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom such oral confession or statement was made.
 

 C. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the substance of any oral statement which the state intends to offer in evidence made by the defendant, whether before or after arrest, in response to interrogation by any person then known to. the defendant to be a law enforcement officer.
 

 La. C. Cr. P. art. 719 provides:
 

 A. Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph, or otherwise reproduce any results or reports, or copies thereof, of a physical or mental examination, and of scientific tests or experiments, made in connection with or material to the particular case, that are in the possession, custody, control, or knowledge of the district attorney and intended for use at trial. Exculpatory evidence shall be produced under this Article even though it is not intended for use at trial.
 

 
 *470
 
 B. In addition, upon motion of the defendant, whenever the court orders the defendant to provide urine, blood, saliva, or hair samples or samples of other bodily substances for deoxyribonucleic acid testing in a criminal case, the defendant shall be authorized to acquire one-half of the deoxyri-bonucleic acid sample to be tested separately by the defendant at his expense.
 

 [6]
 

 . Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. arts. 801(A)(1), 801(C). Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 802. Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter, who is not subject to cross-examination and other safeguards of reliability.
 
 State v. Martin,
 
 458 So.2d 454 (La.1984).
 

 If a statement is not introduced to prove the truth of the matter asserted, then that statement, by definition, is not hearsay.
 
 State v. Tate,
 
 25,765 (La.App.2d Cir.2/23/94), 632 So.2d
 
 1213, writ denied,
 
 94-1218 (La.8/23/96), 678 So.2d 33.
 

 The Louisiana Supreme Court has long held that the admission of hearsay testimony is harmless error where the effect is merely cumulative or corroborative of other testimony adduced at trial.
 
 State v. Johnson,
 
 389 So.2d 1302 (La.1980);
 
 State v. McIntyre,
 
 381 So.2d 408 (La.1980),
 
 cert. denied, McIntyre v. Louisiana,
 
 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 90 (1980).
 

 Harmless error analysis begins with the premise that the evidence is otherwise sufficient to sustain the conviction if viewed from the perspective of a rational factfinder and asks whether beyond a reasonable doubt the error could not have contributed to the verdict actually returned by the defendant’s jury.
 
 State v. Haddad,
 
 1999-1272 (La.2/29/00), 767 So.2d 682,
 
 cert. denied,
 
 531 U.S. 1070, 121 S.Ct. 757, 148 L.Ed.2d 660 (2001). The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.
 
 Sullivan v. Louisiana,
 
 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).
 

 [7]
 

 . As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post conviction relief ("PCR”) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930.
 
 State ex rel. Bailey v. City of West Monroe,
 
 418 So.2d 570 (La.1982);
 
 State v. Ellis,
 
 42,520 (La.App.2d Cir.9/26/07), 966 So.2d 139,
 
 writ denied,
 
 07-2190 (La.4/4/08), 978 So.2d 325. A motion for new trial is also an accepted vehicle by which to raise such a claim.
 
 Id.
 
 When the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy.
 
 State v. Ratcliff,
 
 416 So.2d 528 (La.1982);
 
 State v. Willars,
 
 27,394 (La.App.2d Cir.9/27/95), 661 So.2d 673.
 

 A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish that his attorney was ineffective, the defendant first must show that counsel’s performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel” guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel’s representation fell below the standard of reason
 
 *472
 
 ableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases.
 
 Strickland, supra.
 
 The assessment of an attorney’s performance requires his conduct to be evaluated from counsel’s perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment.
 
 State v. Grant,
 
 41,745 (La.App.2d Cir.4/4/07), 954 So.2d 823,
 
 writ denied,
 
 2007-1193 (La.12/7/07), 969 So.2d 629;
 
 State v. Moore,
 
 575 So.2d 928 (La.App. 2d Cir.1991). Second, the defendant must show that counsel’s deficient performance prejudiced his defense. This element requires a showing the errors were so serious as to deprive the defendant of a fair trial,
 
 i.e.,
 
 a trial whose result is reliable.
 
 Strickland, supra.
 
 The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different.
 
 Strickland, supra; State v. Pratt,
 
 26,862 (La.App.2d Cir.4/5/95), 653 So.2d 174,
 
 writ denied,
 
 95-1398 (La.11/3/95), 662 So.2d 9. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice.
 
 Strickland, supra; State v. Jordan,
 
 35,643 (La.App.2d Cir.4/3/02), 813 So.2d 1123,
 
 writ denied,
 
 2002-1570 (La.5/30/03), 845 So.2d 1067.
 

 In
 
 State
 
 v.
 
 Allen,
 
 2003-2418 (La.6/29/05), 913 So.2d 788,
 
 cert. denied,
 
 547 U.S. 1132, 126 S.Ct. 2023, 164 L.Ed.2d 787 (2006), the supreme court stated that the failure to object to a valid error may be the proper subject of a post conviction claim of ineffective assistance of counsel. Conversely, the failure to object to invalid errors may not be the proper subject of a claim of ineffective assistance of counsel.
 
 Slate v. Grant, supra.