WILLIAMS, J.
 

 _JjThe defendant, Brian Edward Holman, was charged by amended bill of information with indecent behavior with a juvenile, a violation of LSA-R.S. 14:81. After a bench trial, the defendant was found guilty as charged. Defendant was subsequently adjudicated a second-felony habitual offender with an agreed sentence of 14 years’ imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence, to be served concurrently with any other sentence defendant was obligated to serve. The defendant appeals his conviction. For the following reasons, we affirm.
 

 FACTS
 

 On March 13, 2006, the Shreveport Police Department received a referral from the Office of Community Services regard
 
 *447
 
 ing the alleged molestation of a nine-year-old girl by the defendant, who was 28 years old at the time. The victim, M.C., was born in March 1996 and was the niece of the defendant’s wife. The complaint was based on the defendant’s conduct that was alleged to have occurred between March 2003 and March 2006, and included the fondling of the victim’s buttocks and genital area. Paula Moreno, a detective with the Shreveport Police Sex Crimes Unit, investigated the reported sexual abuse of M.C. by the defendant. As part of her investigation, Detective Moreno had M.C. participate in a forensic interview and a physical examination.
 

 In the video-recorded interview at the Gingerbread House in Shreveport, M.C. indicated that her first recollection of the defendant “messing with her” dated back to when she was 6½ years old, although she was not clear about what had happened. Her next recollection was of the | ^defendant touching her “private” about three days after her seventh birthday when M.C. and her younger sister had been left in the defendant’s care. M.C. stated that when she and her younger sister spent the night at their aunt’s home, her husband, the defendant, would lie down with the girls when they went to bed. M.C. and her sister slept in the same bed, and the three would lie down together with M.C.’s younger sister between M.C. and the defendant. On these occasions, while the girls’ aunt was in the living room fixing her hair, the defendant would reach over M.C.’s younger sister and touch M.C.’s buttocks, thighs and genital area. M.C. stated that sometimes the defendant would move her hand onto his “private.” She said that while the defendant was touching her his hand would be “shaking” or “vibrating.” M.C. stated that another time defendant lifted up the pants of her pajamas, looked inside her pants and uttered the word “sexy.” She also stated that he would “mess” with her while she was playing video games. Lastly, M.C. stated that the defendant provided her cigarettes, allowed her to play video games she was not otherwise allowed to play, and on one occasion gave her alcohol to drink.
 

 Dr. Ann Springer, an expert in pediatric and child abuse medicine, testified that she performed a physical examination of M.C. Dr. Springer also conducted a colposcopic exam of M.C. that involved a visual examination of the child’s genitalia using a colpo-scope, an instrument that provides a magnified view of the genital area. During this exam, Dr. Springer observed a small hemorrhagic area of the hymen that was consistent with sexual abuse of the child.
 

 Is At trial, M.C. testified that the video was an accurate recording of her prior statement and that she had told the truth to the interviewer. In elaborating on the allegations contained in the video, M.C. stated that the defendant had sexually touched her “quite a few times,” perhaps more than 20 times in all. On cross-examination, M.C. stated that there “was never a light on” in the bedroom at her aunt’s house when she and her sister were going to sleep.
 

 Ashley Holman, M.C.’s aunt, testified that on the day before M.C. told her that the defendant had touched her inappropriately, the girls had spent the night at her house as they often did. She had put the girls to bed and was preparing to dry and straighten her hair in the living room when M.C.’s younger sister asked for someone to lie down with her. Ashley stated that the defendant volunteered to get in the bed with the girls. When Ashley checked on the girls later, she found M.C. crying, but was unable to get her to say what was wrong. The next day, when Ashley returned the girls to their mother’s house, M.C. told her aunt that the defendant had
 
 *448
 
 touched her below the waist. Ashley testified that she was not sure how many times the defendant had been in the bed with the girls, but estimated that it was “not a whole lot” and “maybe three or four times.” She stated that while the doorway to the girls’ bedroom was visible from the living
 
 room,
 
 Ashley could not see what the occupants of the room were doing. When asked if M.C.’s younger sister liked to sleep with a light on, Ashley answered in the affirmative and stated that the room had an LED “night light” that changed colors. Ashley recounted an incident early in her [ 4marriage when M.C. was sleeping on the floor of the couple’s bedroom and the defendant then lay on the floor next to the child, claiming that his back was hurting. Ashley recalled that defendant often had offered to keep M.C. in his care when others would be out of the house. M.C.’s grandmother, Diane Kirk, also testified that the defendant had offered to stay with the child while others were not going to be around.
 

 Detective Moreno testified that at the time of the initial investigation, she was unable to make contact with or locate the defendant. Moreno indicated that because the defendant could not be located, the case was “exceptionally closed” until approximately two years later when another child made a sexual abuse allegation against the defendant. Detective Moreno gave somewhat conflicting testimony as to whether this “exceptional” closure was due to her inability to locate the defendant or because she did not feel there was sufficient probable cause to obtain an arrest warrant. Nevertheless, Moreno stated that when the new allegation surfaced in 2008, an arrest warrant was obtained for both the new allegation and the instant charge, and the defendant was arrested.
 

 Pursuant to the state’s notice under LSA-C.E. art. 412.2 of its intent to present evidence of similar crimes, wrongs or acts committed by the defendant, the court heard testimony regarding the defendant’s prior sexual abuse of two other minor children, A.C. and B.A. At trial, A.C. testified that she had met defendant in 1997 or 1998 at a skating rink in Shreveport, Louisiana. Although she did not recall the exact date they met, A.C. remembered that she was 12 years old and that defendant was 20 years old |sat the time. On the evening they met, the defendant drove A.C. to an area behind a building on Mansfield Road where the two removed their clothing and manually stimulated each other’s genitalia. The state submitted minutes of court proceedings showing that defendant pled guilty to one count of indecent behavior with a juvenile on January 13, 1999, and was sentenced to three years at hard labor. The sentence was suspended subject to two years of supervised probation.
 

 B.A., whose date of birth is May 25, 1982, testified that she was 15 years old when she and the defendant started a sexual relationship. She stated that the defendant was aware of her age and that she thought
 
 the
 
 defendant was 21 years old at the time. However, she recalled the year of the relationship as being 1997 or 1998, when the defendant would have been either 19 or 20 years old. B.A. testified that during their relationship, the defendant took her in his truck and parked behind a building on Mansfield Road, where they engaged in sexual intercourse. The state submitted court minutes showing that on January 13,1999, the defendant pled guilty to one count of felony carnal knowledge of a juvenile and was sentenced to three years at hard labor, with the sentence suspended subject to two years of supervised probation.
 

 The defendant testified on his own behalf and denied the allegations made by M.C. Defendant stated that while he did
 
 *449
 
 lie down with the girls on occasion at the younger sister’s request, it had not been very often and never included any inappropriate behavior with M.C. He testified that on the night before M.C. made the accusation, he had disciplined M.C. with a [ fipaddle for playing a video game she was not allowed to play, an event no other witness recalled. Defendant alleged that after disciplining M.C., she threatened him by saying that she was going to tell her mother that the defendant touched her. On cross-examination, however, he admitted that he had not mentioned such a threat by the child the following day when his wife, mother-in-law and M.C. confronted him with M.C.’s allegations. Defendant also denied ever offering to keep M.C. while the others went shopping.
 

 As to his prior offenses, defendant admitted that during the summer of 1998 he had a sexual relationship with B.A., who he said was 16 years old at the time. He also claimed that he was 19 years old in the summer of 1998, despite his January 11, 1978, birth date. Defendant testified that in January 1999, he pled guilty to carnal knowledge of a juvenile as a result of his conduct with B.A. As to the allegations made by A.C., defendant admitted only that he had met her one night - in the smoking section of the skating rink, that he had left the rink with her to drive her home and that they had driven to a gas station to buy cigarettes. Although he denied that he had engaged in sexual activity with A.C., defendant admitted that in January 1999, he pled guilty to one count of indecent behavior with a juvenile, A.C. Defendant claimed on the stand that he pled guilty because the suspended sentence provided for in the plea agreement allowed him to be released from jail.
 

 After reviewing the evidence and finding M.C.’s testimony to have been credible, the trial court found the defendant guilty as charged. The |7state then filed a “Serial Sexual Offender Bill of Information” charging the defendant as a third-felony sex offender and seeking the imposition of a life sentence under LSA-R.S. 15:537(B), based on the present conviction and his prior guilty pleas entered on January 13, 1999. Defendant filed a motion to quash the serial offender bill on the basis that his two prior pleas were entered on the same day before October 19, 2004, and therefore, could only be counted as one conviction for sentence enhancement. The state then filed an amended bill charging the defendant as a second-felony offender.
 

 At the habitual offender hearing on November 17, 2010, defense counsel stated that the defendant accepted the state’s offer of a sentencing cap and the dismissal of two other pending charges in exchange for his admission to being a second-felony offender. The court then sentenced the defendant to serve 14 years at hard labor without the benefit of parole, probation or suspension of sentence, to be served concurrently with any other sentence the defendant was obligated to serve. This appeal followed.
 

 DISCUSSION
 

 The defendant contends the evidence presented was insufficient to support his conviction for indecent behavior with a juvenile. Defendant argues that the victim’s testimony was not credible because other witnesses contradicted her statements regarding the number of times she was molested and whether the bedroom light was on when the crimes were committed. Defendant further argues that the insufficiency of the evidence was shown by Detective Moreno’s testimony that the investigation was initially suspended because the officer did not believe there was enough evidence to | sobtain an arrest warrant.
 

 
 *450
 
 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Tate,
 
 2001-1658 (La.5/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833. The appellate court does not assess the credibility of witnesses or reweigh the evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a fact finder’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Shivers,
 
 43,731 (La.App.2d Cir.12/3/08), 998 So.2d 877.
 

 The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable |3doubt that defendant was guilty of every essential element of the crime.
 
 State v. Sutton,
 
 436 So.2d 471 (La.1983);
 
 State v. Speed,
 
 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582,
 
 writ denied,
 
 2009-0372 (La.11/6/09), 21 So.3d 299;
 
 State v. Parker,
 
 42,311 (La.App.2d Cir.8/15/07), 963 So.2d 497,
 
 writ denied,
 
 2007-2053 (La.3/7/08), 977 So.2d 896. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the issue raised is the weight of the evidence, not its sufficiency.
 
 State v. Speed, supra.
 

 In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Gullette,
 
 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753;
 
 State v. Burd,
 
 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219,
 
 writ denied,
 
 2006-1083 (La.11/9/06), 941 So.2d 35. The testimony of a sexual assault victim alone is sufficient to convict a defendant. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant.
 
 State v. Chandler,
 
 41,063 (La.App.2d Cir.9/8/06), 939 So.2d 574,
 
 writ denied,
 
 2006-2554 (La.5/11/07), 955 So.2d 1277.
 

 To convict an accused of indecent behavior with a juvenile, the state must prove beyond a reasonable doubt that the defendant: (1) committed any lewd or lascivious act upon the person or in the presence of any child under the age of 17; (2) was over the age of 17 and more than two years older than the victim; and (3) had the intention of arousing or gratifying the | insexual desires of either person. LSA-R.S. 14:81;
 
 State v. Cooper,
 
 45,320 (La.App.2d Cir.6/30/10), 42 So.3d 460,
 
 writ denied,
 
 2010-1821 (La.2/11/11), 56 So.3d 998. Indecent behavior with a juvenile is a specific intent crime for which the state must prove the offender’s intent to arouse or gratify his sexual desires by his actions
 
 *451
 
 involving a child.
 
 State v. Caston,
 
 43,565 (La.App.2d Cir.9/24/08), 996 So.2d 480.
 

 Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. LSA-R.S. 14:10(1);
 
 State v. Draughn,
 
 2005-1825 (La.1/17/07), 950 So.2d 583,
 
 cert.
 
 denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007). The determination of whether the requisite intent is present in a criminal case is for the trier of fact.
 
 State v. Huizar,
 
 414 So.2d 741 (La.1982).
 

 In the present case, the state established that during the period of March 2003 through March 2006, the victim, M.C., was between six and nine years of age and the defendant was between 25 and 28 years of age. M.C. testified that the defendant, during this time and on multiple occasions, rubbed her genital area, fondled her chest, thighs and buttocks, and placed her hand on his penis. The defendant committed these acts while lying in bed with the child and while she played video games. To the extent specific intent can be inferred from the circumstances, the nature of the defendant’s actions allowed the trial court to infer that defendant intended to arouse his sexual desires.
 

 The issues raised by defendant in brief go strictly to the weight of the evidence and not its sufficiency. M.C. did testify that the defendant had ^engaged in this behavior more than 20 times, and her aunt did testify that the defendant had been in the victim’s bed on only three or four occasions. However, because M.C. also testified that the defendant had committed the sexual abuse in places other than the bed where she slept, there is nothing inconsistent between her testimony and that of her aunt.
 

 Nor is the -witnesses’ testimony as to whether there were “lights” on in the room irreconcilable. M.C. testified that when she and her sister were going to sleep, there was no light on in the room. Her aunt, on the other hand, testified that the victim’s younger sister, who was also in the room, liked to have an LED “night light” on when she went to bed. The most logical explanation for this alleged discrepancy is that M.C., who was 14 years old at the time of trial, did not assume counsel’s question included a small night light, which ordinarily does not illuminate a room. Another possibility is that M.C. assumed defense counsel’s question to be limited to those occasions when the defendant engaged in the offending conduct, the focal point of the questions asked of her at trial. Such an interpretation would not conflict with the aunt’s testimony in which she indicated that M.C.’s younger sister “like[d] for the light to be left on.” Despite the defendant’s assertion to the contrary, that testimony is not the equivalent of stating that the light was always on in the room.
 

 After hearing the testimony, the trial court specifically found that M.C. was a credible witness and noted the medical evidence, which was consistent with the child’s report of sexual abuse. Based upon this record, we conclude that the evidence presented by the state was more than 112sufficient to prove that defendant committed the offense of indecent behavior with a juvenile. The assignment of error lacks merit.
 

 Error Patent
 

 In reviewing the record for error patent, we note that the trial court did not advise the defendant of any rights relative to a multiple offender proceeding. In habitual offender proceedings, the state is required to prove only a prior felony conviction and that the defendant is the person convicted of the earlier offense.
 
 State v. Odom,
 
 34,054 (La.App.2d Cir.11/1/00), 772 So.2d 281. Before accept
 
 *452
 
 ing a defendant’s admission that he is a multiple offender, the trial court must specifically advise defendant of his rights to a formal hearing, to require the state to prove his identity as a multiple offender, and to remain silent. A trial court’s failure to properly advise a defendant of his rights under the Habitual Offender Law constitutes patent error on the face of the record.
 
 State v. Odom, supra.
 
 Generally, the court’s failure to advise defendant of his rights to a hearing and to remain silent is not considered reversible error where the defendant’s habitual offender status is established by competent evidence offered by the state at a hearing, rather than by admission of the defendant.
 
 State v. Mason,
 
 37,486 (La.App.2d Cir.12/10/03), 862 So.2d 1077.
 

 In the present case, the record shows that defendant appeared at the habitual offender hearing with counsel. Thus, his right to a hearing was protected. In
 
 State v. Brown,
 
 42,188 (La.App.2d Cir.9/26/07), 966 So.2d 727,
 
 writ denied,
 
 2007-2199 (La.4/18/08), 978 So.2d 347, this court relied on the defendant’s trial testimony that he had been convicted of the two | isprior felony offenses and on certified copies of the court minutes and transcripts in the prior convictions in concluding that the defendant’s guilt was established by competent evidence; therefore, the failure to advise was harmless. As in
 
 Brown, supra,
 
 the defendant in this case admitted at trial that in 1999 he had pled guilty to one count of indecent behavior with a juvenile and one count of carnal knowledge of a juvenile. Moreover, the state also presented additional evidence of defendant’s prior convictions through the trial testimony of the victims in the prior offenses.
 

 Considering the circumstances of this case, where defendant admitted to the pri- or felony convictions at trial and the state presented victim testimony identifying defendant as the person previously convicted, we conclude there was competent evidence to establish that defendant was a multiple offender outside of his admission at the habitual offender hearing. Accordingly, the trial court’s failure to inform defendant of his rights to remain silent and to require the state to prove his identity as an habitual offender was harmless error.
 

 CONCLUSION
 

 For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
 

 AFFIRMED.